UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARVIN BADIO, | * | |
| Plaintiff, | * * * | |
| v. | * * | Civil Action No. 19-cv-12591-ADB |
| G4S SOLUTION USA, BROCKTON POLICE DEPARTMENT, and MICHAEL SKINNER, | * * * | |
| Defendants. | * * | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

BURROUGHS, D.J.

Plaintiff Marvin Badio ("Plaintiff"), appearing *pro se*, brings this action against G4S Solution USA ("G4S"), the Brockton Police Department ("Brockton PD"), and Brockton PD Lt. Michael Skinner ("Skinner" and, with Brockton PD, "Brockton Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Fair Labor Standards Act ("FLSA"), and his Fourteenth Amendment rights. [ECF No. 4]. Currently before the Court are motions to dismiss filed by the Brockton Defendants, [ECF No. 13], and G4S, [ECF No. 17]. For the reasons set forth below, the motions, [ECF Nos. 13, 17], are GRANTED.

**I.    BACKGROUND**

   **A.    Factual Background**

For purposes of this Order, the relevant facts are drawn from Plaintiff's amended complaint, [ECF No. 4], and viewed in the light most favorable to Plaintiff. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citations omitted).

Plaintiff is African and Haitian American. [ECF No. 4 ¶ 19]. From April 2015 to December 27, 2016, Plaintiff worked for G4S as an unarmed security guard. [Id. ¶¶ 1, 6]. On

December 15, 2016, Plaintiff was given an opportunity to be promoted to an armed security guard, subject to his passing the Multiphasic Personality Inventory test ("MPI test"). [Id. ¶ 3]. Plaintiff took the MPI test on December 21, 2016, [id. ¶ 4], and on December 27, 2016 was informed that he was being terminated from the company because he had not passed the test, [id. ¶ 6].

On January 27, 2017, Plaintiff was offered a position as an armed security guard at another security company, Allied Universal, after passing the same MPI test which he had taken at G4S. [ECF No. 4 ¶ 7]. Plaintiff maintained his position with Allied Universal, working as an armed security guard at Bank of America, until October 12, 2017, at which point Allied Universal lost its bid for the Bank of America contract to Plaintiff's former employer, G4S. [Id. ¶¶ 8–9]. When G4S took over the Bank of America contract, it offered every armed employee currently working under the former Allied Universal contract, with the exception of Plaintiff, the opportunity to continue working at Bank of America with G4S. [Id. ¶ 9]. By way of explanation for his exclusion, G4S's human resources director told Plaintiff that he was "not welcome[] to work for G4S." [Id. ¶ 10].

In September 2018, St. Moritz, another security company, hired Plaintiff as an armed security guard. [ECF No. 4 ¶ 11]. St. Moritz required Plaintiff to purchase his own firearm. [Id.]. On September 21, 2018, Plaintiff attempted to purchase a firearm at a store in Holbrook, Massachusetts but employees at the store informed Plaintiff that there was an issue with his license to carry a firearm ("LTC"). [Id. ¶ 12]. Plaintiff was told to contact Brockton PD and to speak with Skinner regarding the issue. [Id.]. That day, Plaintiff met with Skinner, who told Plaintiff that his LTC had been suspended. [Id. ¶ 13]. On October 8, 2018, Plaintiff once again

met with Skinner, at which time Plaintiff was informed that his LTC had been revoked.  [Id. ¶ 14].

### B.      Procedural Background

Plaintiff filed his initial complaint on December 26, 2019, bringing suit against G4S and the Brockton Defendants, as well as several G4S employees, for violations of Title VII, the Health Insurance Portability and Accountability Act ("HIPAA"), and the Occupational Safety and Health Act ("OSHA").  [ECF No. 1].  Plaintiff also filed a motion for leave to proceed *in forma pauperis*.  [ECF No. 2].  Plaintiff timely filed an amended complaint on January 8, 2020, which added an FLSA claim against G4S and several G4S employees, [ECF No. 4], and later filed a motion to appoint counsel, [ECF No. 5].

On March 10, 2020, the Court issued an order granting Plaintiff's motion for leave to proceed *in forma pauperis* and denying Plaintiff's motion to appoint counsel, without prejudice, determining the motion to be premature.  [ECF No. 6 ¶¶ 1–2].  In that Order, the Court dismissed all of Plaintiff's claims against the individual G4S employees, the Title VII claims brought against all but G4S, as well as all HIPAA and OSHA claims, [id. ¶ 3–4], but found that Plaintiff's amended complaint could be read to allege a 42 U.S.C. §1983 claim against the Brockton Defendants, premised on the Fourteenth Amendment's Equal Protection clause, [id. ¶ 4].  The remaining claims are therefore Counts I, II, and III (Title VII) and Count IV (FLSA) against G4S, and Count VIII (Equal Protection claim under § 1983) against the Brockton Defendants.  See [ECF No. 6].

The Brockton Defendants filed a motion to dismiss on May 25, 2020, [ECF No. 13], and G4S filed a motion to dismiss on July 6, 2020, [ECF No. 17].  Plaintiff opposed both motions. [ECF Nos. 14, 22].

## II.     LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (citations omitted).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.

2012)).  Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

In addition to the general standard applicable to a motion to dismiss, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  "However, pro se status does not insulate a party from complying with procedural and substantive law."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  That being said, the Court "hold[s] pro se pleadings to less demanding standards . . . to guard against the loss of *pro se* claims due to technical defects," Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008), and must generously construe arguments which a *pro se* Plaintiff makes in their briefing, Ahmed, 118 F.3d at 890.

### III.  DISCUSSION

#### A.  Claims Against G4S

##### 1.  Title VII Claims

Plaintiff asserts that G4S discriminated against him on the basis of his race in violation of Title VII.  [ECF No 4 ¶¶ 18–22].  G4S moves to dismiss this claim, asserting that Plaintiff did not file a timely charge with the Equal Employment Opportunity Commission ("EEOC") and therefore failed to exhaust his administrative remedies.  [ECF No. 18 at 3–5].

"Title VII is a vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin."  Franceschi v. U.S. Dept. of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008).  Because the EEOC is the primary resource for pursuing a Title VII charge, id., "Title VII requires exhaustion of

5

administrative remedies as a condition precedent to suit in federal district court," Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990). "[T]he failure to exhaust this administrative process 'bars the courthouse door.'" Franceschi, 514 F.3d at 85 (quoting Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999)). "[A]ny person seeking relief under Title VII must file a charge with the EEOC 'within one hundred and eighty days after the alleged employment practice occurred,' or, if a claim is filed instead with a state or local agency, 'within three hundred days after the alleged unlawful employment practice occurred." Rodriguez v. Smithkline Beecham, 224 F.3d 1, 7 (1st Cir. 2000) (internal citation omitted) (quoting 42 U.S.C. § 2000e-5(e)(1)).

Here, Plaintiff alleges that G4S violated Title VII when it refused to rehire him in October 2017, [ECF No. 4 ¶¶ 9, 26], but he did not file a complaint with the EEOC until October 4, 2019, [ECF No. 17-1 at 2 (copy of EEOC complaint)], which was well after the one-hundred-and-eighty-day EEOC limitations period ended, see 42 U.S.C. § 2000e-5(e)(1). Failing to file a charge with the EEOC within the statutory period precludes Plaintiff from pursuing legal action on his Title VII claims, and Counts I, II, and III are therefore DISMISSED with prejudice. See Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011) (affirming dismissal of Title VII claim where plaintiff failed to exhaust administrative remedies).[1]

2. FLSA Claim

Plaintiff alleges that G4S failed to pay him the correct wages for two separate week-long periods in 2015, and also asserts that G4S failed to pay him overtime at unspecified times

---

[1] Even assuming that Plaintiff's allegation that G4S improperly provided the Brockton PD with Plaintiff's MPI test results in October 2018 is true, because Plaintiff was no longer employed with G4S or seeking employment with the company, the allegation fails to support a claim under Title VII. See [ECF No. 4 ¶ 14]; Franceschi, 514 F.3d at 85 (describing Title VII as a means to redress employment discrimination).

throughout his employment. [ECF No. 4 ¶¶ 32–33]. G4S responds that Plaintiff's FLSA claim is barred by the statute of limitations, and that the claim, which he added in his amended complaint, does not relate back to his original complaint. [ECF No. 18 at 5–7].

Under the FLSA, a cause of action for unpaid compensation "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An amended complaint "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The addition of new claims to an amended pleading does not alone defeat relation back; the question instead is whether the initial pleading provided a defendant with adequate notice of the potential new claims." Quaak v. Dexia, S.A., 445 F. Supp. 2d 130, 137 (D. Mass. 2006).

Plaintiff filed his complaint on December 26, 2019, [ECF No. 1], and filed his amended complaint, adding an FLSA claim against G4S, on January 9, 2020, [ECF No. 4]. In his amended complaint, Plaintiff alleges that G4S failed to pay him the correct wages from October 19, 2015 through October 25, 2015, and from October 26, 2015 through November 1, 2015. [Id. ¶ 32]. Even assuming (1) that these underpayments were willful and that the three-year statute of limitations period therefore applied, and (2) that Plaintiff's amended complaint relates back to his original complaint, these allegations fall well outside of the limitations period. See 29 U.S.C. § 255(a).

In his amended complaint, Plaintiff also makes a conclusory allegation that "Defendant G4S failed to pay overtime to Plaintiff when Plaintiff had worked for over 40 hours a week

during multiple times." [ECF No. 4 ¶ 33]. Plaintiff provides no additional detail in support of this allegation, nor does he specify what he believes shows that the failure was willful. See [id.]. Because Plaintiff does not provide the dates of the alleged uncompensated overtime, for the purposes of this motion, the Court will assume that the final date of alleged overtime underpayment coincided with Plaintiff's last day of employment with G4S, which was December 27, 2016. [Id. ¶ 6].

Plaintiff first made this allegation regarding overtime payments in his amended complaint, filed in January of 2020. [ECF No. 4]. Plaintiff's original complaint mentioned that he was bringing a claim under the "Wage Act" and stated that G4S was liable for "non-payment of wages," [ECF No. 1 at 1], but did not include claims under the FLSA or the Massachusetts Wage Act or any specific allegations regarding unpaid overtime. See generally [id.]. Instead, Plaintiff's initial complaint was focused on his Title VII, OSHA, and HIPAA claims. [Id.]. Although a close call, the Court will liberally construe Plaintiff's original complaint to have given notice to G4S of a claim related to unpaid overtime. See Quaak, 445 F. Supp. 2d at 137. Accordingly, the Court finds that Plaintiff's amended complaint, filed just over a week outside of the three-year statute of limitations period for willful claims, related back to the original complaint, filed one day before the three-year statute of limitations period expired. See Fed. R. Civ. P. 15(c)(1)(B).

Even so, however, given the lack of detail provided in support of this claim, Plaintiff's FLSA claim (Count IV) is DISMISSED without prejudice. As this claim will only be allowed to move forward on the allegation that G4S willfully failed to pay overtime, if Plaintiff chooses to amend his complaint to pursue an FLSA claim against G4S, Plaintiff must provide additional support for this allegation, such as the dates on which he worked overtime but was not paid for

those additional hours and allegations specific to G4S's willful violation of the statute. In addition, Plaintiff will be limited to alleging an overtime payment violation for his final pay period with the company, which ended December 27, 2016, because any earlier alleged violations would be outside of the three-year statute of limitations for willful violations.

### B.    Claim Against Brockton Defendants[2]

As noted above, the Court has construed Plaintiff's Title VII claim against the Brockton Defendants as an Equal Protection claim under § 1983. See [ECF No. 6 ¶ 4].

#### 1.    Failure to Exhaust Administrative Remedies and Statute of Limitations Defenses

The Brockton Defendants assert that Plaintiff has failed to state a claim which would entitle him to relief because he never appealed the December 22, 2016 suspension of his LTC and his claim is therefore barred both procedurally and under the relevant statute of limitations. [ECF No. 13 at 8–9]. Plaintiff maintains that he never received notice that his LTC had been suspended, [ECF No. 15 at 7], and was only made aware of the suspension when he unsuccessfully attempted to purchase a firearm on September 21, 2018, [id. at 2].

Under Massachusetts state law,

> [a]ny applicant or holder aggrieved by a denial, revocation, suspension or restriction placed on a license . . . may, within either 90 days after receiving notice of the denial, revocation or suspension or within 90 days after the expiration of the time limit during which the licensing authority shall respond to the applicant or . . . file a petition to obtain judicial review. . . .

---

[2] The Brockton Defendants cite Federal Rule of Civil Procedure 12(b)(4) (insufficient process) as a basis for dismissal, stating only that Plaintiff "failed to serve [them] with his Amended Complaint and Court Order." [ECF No. 13 at 1, 4]. Given the Brockton Defendants' limited discussion on this issue and the fact that the docket shows proof of service by a U.S. Marshal, [ECF Nos. 11, 12], the Court assumes that the Brockton Defendants did not intend to advance this argument and does not address it in the Order.

Mass. Gen. Laws ch. 140, § 131.  "In the absence of express provision to the contrary, a notice is not given until received by the person to be notified."  Police Comm'r of Bos. v. Robinson, 716 N.E.2d 652, 656 (Mass. App. Ct. 1999) (quoting Costello v. Bd. of Appeals of Lexington, 333 N.E.2d 210, 212 (Mass. App. Ct. 1975)).  Given Plaintiff's assertion that he did not receive notice of his LTC suspension, which is corroborated by his allegation in the amended complaint that nearly two years after his license was suspended he was surprised to find that he was unable to purchase a new firearm, the Court finds that, at least at this stage, the claim is not barred by Plaintiff's failure to timely appeal the suspension.

The Brockton Defendants also argue that Plaintiff's claim is barred by the statute of limitations.  [ECF No. 13 at 8–9].  As the Brockton Defendants note, § 1983 does not include a statute of limitations, but the Supreme Court has directed courts to identify an analogous state law to determine an appropriate limitations period.  [Id. at 8]; see Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 462 (1975) (stating that "the controlling period would ordinarily be the most appropriate one provided by state law"); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (similar).  The First Circuit has determined that "a federal court adjudicating a section 1983 action must borrow the forum state's general statute of limitations for personal injury actions."  Centro Medico, 406 F.3d at 6.  "Massachusetts has a three-year statute of limitations for personal injury actions . . . ."  Bettencourt v. Town of Mendon, 334 F. Supp. 3d 468, 483 (D. Mass. 2018) (citing Mass. Gen. Laws ch. 260, § 2A).  As to accrual,

> [a]lthough section 1983 borrows its limitations period from state law, the accrual date for a section 1983 claim is measured by federal law.  Under federal law, such a cause of action accrues when the plaintiff knows, or has reason to know of the injury on which the action is based.

Bettencourt, 334 F. Supp. 3d at 483 (internal quotation marks omitted) (quoting Alamo-Hornedo v. Puig, 745 F.3d 578, 581 (1st Cir. 2014)); Torres v. Superintendent of Police, 893 F.2d 404,

10

407 (1st Cir. 1990) ("The accrual period for a Section 1983 action begins when the plaintiff knows or has reason to know of the injury which is the basis of the action.").

Plaintiff alleges that he was not aware of his suspended LTC until he attempted to purchase a firearm on September 21, 2018, [ECF No. 4 ¶¶ 42–43], therefore his § 1983 claim—filed just over one year later—is not barred by the three-year statute of limitations. [ECF No. 15 at 7–8]. Should evidence come to light during discovery demonstrating that Plaintiff did, in fact, receive notice of his December 22, 2016 LTC suspension such that his December 26, 2019 complaint was filed outside of the three-year statute of limitations period, the Brockton Defendants may raise the defense again.

2. Equal Protection Claim

Plaintiff argues that the Brockton Defendants have discriminated against him on the basis of his race and national origin in violation of the Fourteenth Amendment. [ECF No. 4 ¶¶ 45, 49]. More specifically, he contends that the Brockton Defendants' revocation of his LTC lacked reason or justification and therefore was attributable only to his status as a member of a protected class. [Id. ¶¶ 49–50]. The Brockton Defendants assert that Plaintiff has not properly stated a claim against them as Plaintiff did not comply with Federal Rule of Civil Procedure 8 and failed to plead the necessary elements of a Fourteenth Amendment Equal Protection claim. [ECF No. 13 at 4–8].

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). The statute "supplies a private right of action against a person who, under color of state law, deprives another of 'any rights, privileges, or immunities secured by the Constitution and [federal] laws.'" Gray v. Cummings, 917 F.3d 1,

7 (1st Cir. 2019) (alteration in original) (quoting 42 U.S.C. § 1983).  To maintain a cause of action under § 1983, a plaintiff must show that "the challenged conduct [is] attributable to a person acting under color of state law" and that "the conduct . . . worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).  For purposes of the Brockton Defendant's motion, the Court will assume that Skinner, as an employee of a municipal police department, was acting under color of state law.  See O'Connell v. Gross, No. 19-cv-11654, 2020 U.S. Dist. LEXIS 62925, at *11 (D. Mass. Apr. 10, 2020) (assuming for purposes of motions to dismiss that defendants were acting under color of state law).  With regard to the Brockton PD,

> [a] local governing body, such as a municipality or its police department . . . can be sued directly under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulations or decision officially adopted and promulgated by that body's officers . . . (or was taken) pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels."

Malachowski v. City of Keene, 787 F.2d 704, 711 (1st Cir. 1986) (quoting Monell v. Dep't. of Soc. Services, 436 U.S. 658, 659 (1978)).  Plaintiff has not alleged a specific policy, but rather a custom of discrimination by the Brockton PD.  See [ECF No. 4 ¶ 52].

To raise an Equal Protection claim, a plaintiff must "establish that there is a factual issue as to whether, 'compared with others similarly situated, [they were] selectively treated [unfairly] . . . based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights . . . .'"  Hootstein v. Collins, 928 F. Supp. 2d 326, 345–46 (D. Mass. 2013) (alterations in original) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995)).  As a starting point, a plaintiff "must first 'identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression.'"  Ayala-Sepulveda v.

12

Municipality of San German, 671 F.3d 24, 32 (1st Cir. 2012) (emphasis omitted) (quoting Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006)); see Langadinos v. American Airlines, Inc., 199 F.3d 68, 73 (1st Cir. 2000) ("[The courts] have required civil rights plaintiffs to 'outline facts sufficient to convey specific instances of unlawful discrimination.'" (quoting Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989))).  To survive a motion to dismiss, allegations of a Fourteenth Amendment violation must be supported by more than conclusory statements.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Hootstein, 928 F. Supp. 2d at 346 (similar); Moniz v. Hall, No. 09-cv-11645, 2011 U.S. Dist. LEXIS 11752, at *20 (D. Mass. Feb. 7, 2011) ("Conclusory statements that legal rights have been violated are insufficient to state a claim.").

In his amended complaint, Plaintiff claims that "[the] Brockton Police Department has a reputation of discriminating against minority candidates to provide them LTC licenses," [ECF No. 4 ¶ 52], and that his LTC was revoked by Skinner consistent with that reputation, [id. ¶¶ 48–52].  In support, Plaintiff states that the Brockton Defendants "did [not] have reasons or justification to suspend or revoke Plaintiff's LTC" beyond his membership in a protected class. [Id. ¶¶ 49–50].  Plaintiff also asserts that the Brockton PD discriminated against him by failing to correct the alleged discriminatory action taken by Skinner, who was acting on its behalf.  See [id. ¶ 51].

Beyond these blanket assertions, however, Plaintiff does not allege that others similarly situated were treated differently than he was or provide instances of alleged disparate treatment to support a claim under § 1983 that the Brockton Defendants violated his Fourteenth Amendment right to equal protection under the law.  See Doe ex rel. B.G. v. Bos. Pub. Sch., No.

17-cv-11653, 2019 U.S. Dist. LEXIS 32705, at *18–19 (D. Mass. Mar. 1, 2019) ("Plaintiffs have provided no allegations that they were treated differently from others similarly situated, however, and the Amended Complaint is silent as to the treatment of others.  For these reasons . . . Plaintiffs' equal protection claim must be dismissed.").  Nor does his amended complaint provide more than conclusory statements to support his claim that the Brockton Defendants discriminated against him in violation of his Fourteenth Amendment rights.  See Hootstein, 928 F. Supp. 2d at 346 (granting defendant's motion to dismiss where "the complaint [did] little more than make conclusory allegations that [d]efendants discriminated against [p]laintiffs").  As a result, Plaintiff has failed to state a claim for relief under § 1983.  See Gagliardi, 513 F.3d at 305 (stating that a complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." (citation omitted)).  For these reasons, Plaintiff's § 1983 Equal Protection claim against the Brockton Defendants (Count VII) is DISMISSED without prejudice.[3]

## IV.  CONCLUSION

Accordingly, G4S's motion to dismiss, [ECF No. 17], and the Brockton Defendants' motion to dismiss, [ECF No. 13], are GRANTED.  Counts I, II, and III against G4S are dismissed with prejudice, and Count VI, alleging that G4S violated the FLSA, is dismissed

---

[3] Plaintiff, in his opposition to the Brockton Defendants' motion to dismiss, raises two new claims against them: (1) that they violated his Second Amendment rights, and (2) that they engaged in a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1985. [ECF No. 15 at 4–5].  Plaintiff cannot, however, bring new claims against the Brockton Defendants without first seeking leave from the court to amend his complaint to add those claims.  See Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.").  Plaintiff also attempts to reassert his claims that the Brockton Defendants committed OSHA and HIPAA violations, [ECF No. 15 at 7], but this Court has already dismissed those claims with prejudice and they therefore cannot be relitigated, see [ECF No. 6 ¶ 3 ("All claims brought under [OSHA] and [HIPAA], Counts V, VI, and VII, are DISMISSED with prejudice as to all defendants pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).")].

without prejudice.  Count VIII, alleging a § 1983 violation against the Brockton Defendants, is dismissed without prejudice.  Plaintiff may amend his complaint within thirty (30) days if he believes he can address the deficiencies that the Court identified regarding those claims dismissed without prejudice, namely his FLSA claim (Count IV) against G4S, and his § 1983 claim against the Brockton Defendants (Count VIII).

**SO ORDERED.**

January 12, 2021  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE